## Chesapeake & Ohio Ry. Co., et al. v. White's Adm'x., et al.

(Decided February 20, 1912.)

## Appeal from Shelby Circuit Court.

1  Evidence.—A witness who testifies to an important transaction may be allowed to relate briefly the reasons why he remembers the occurrence, although the relation of these extraneous facts or circumstances may have no connection with the subject matter under investigation.   But this rule should not be extended to persons who are not parties to the transaction, as their testimony would encumber the case with evidence of third parties having no direct relation to the issue in controversy and would direct the attention of the jury to matters having no connection with the case.

2.  Railroads—Liability  for  Misinformation Given by Telegraph Operator to Section Foreman.—Where it is shown to be customary for section foremen to get information from the company's telegraph operators as to the time of trains, the company will be liable if a section foreman is killed or injured as a result of incorrect information given to him by the telegraph operator as to the time of a train.

3.  Same—Duty to Avoid Injury After Discovering Peril.—It is the

duty of those in charge of a railroad train to exercise ordinary care to avoid injury to a person on the track after his peril is discovered.

SHELBY & SHELBY and WILLIS, TODD & BOND for appellants.

GEO. L. PICKETT and RALPH GILBERT for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought to recover damages for the death of Joseph White. The negligence charged, and upon which the case was tried, was misinformation given to the decedent by the telegraph operator at Shelbyville and the failure of the persons in charge of the train by which he was killed to avoid the injury after his peril was discovered. Upon a trial, there was a judgment for $10,500.00 against the appellant company. A reversal is asked for alleged errors in the admission and rejection of evidence, and in instructing the jury.

The facts are substantially these—the decedent White was an old and experienced section foreman, and had served in that capacity with different railroad companies. He had been employed at the time of his death about six months as foreman of the section at Shelbyville, which included several miles of the track east of Shelbyville. On the 24th day of February, 1911, he was at the railroad depot in Shelbyville shortly before nine o'clock in the morning. There was due at that station at nine o'clock train No. 21, a fast passenger train of the Chesapeake & Ohio Railway Company, on its way from the east to Louisville. White had some work to do on his section east of Shelbyville, and there is evidence showing that a few minutes before nine o'clock he inquired of John Kent, an assistant telegraph operator at Shelbyville if the Chesapeake & Ohio train No. 21 was on time, and that Kent informed him that this train was a half-hour late, and that upon receiving this information, White ordered his section crew who were at the depot to get the hand-car ready and start up the track east towards their intended work, which was done. When the hand-car with White and the section crew reached a point three-quarters of a mile east of Shelbyville, they discovered this fast train approaching at a high rate of speed. They at once attempted to remove the hand-car from the track, and succeeded in getting

some of the wheels off, but, before the hand-car was taken from the track, the engine struck it, and some part of the hand-car hit White, causing injuries from which he died during the day.

Before taking up that theory of the case that relates to the discovery of the peril of White, we will dispose of the questions relating to the information given by the telegraph operator to White as to the time of this train. Ed Carney, a section hand, said that he was at the depot and saw White go into the ticket office where Kent attended to his duties, and heard him ask Kent how train No. 21 was running, and Kent told him that it was thirty minutes late. That when he received this information from Kent, White came out of the depot, took out his watch and looked at it, and then ordered the section crew to get the hand-car. Biggers, another section hand said that he went into the ticket office with White, and heard him and Kent talking, and in the course of the conversation he heard White ask Kent if he knew what time No. 21 would be there, and Kent told him that No. 21 was about thirty minutes late. That then White took out his watch and looked at it and called to the section hands to get ready. Evidence of persons who had been train telegraph operators at Shelbyville was also introduced in behalf of appellee to show that it was customary and usual for section foreman to inquire of the telegraph operator how the trains were running—that is, whether they were on time or not.

John Kent, introduced for the appellant railway company, testified in substance that he was the assistant telegraph operator at Shelbyville, and that White came in the office shortly before nine o'clock, and while he was in there, one or two persons called him, Kent, up over the telephone and asked if train No. 21 was on time, and he told them in the hearing of White that that train was on time. He further said that he had asked the dispatcher at Louisville about the time of this train, and was informed by him that it was on time. He also said that he told White that he had heard over the wire that the train was on time. That while White was in there, Lee, the chief telegraph operator at Shelbyville, came in, and that he told him in the presence and hearing of White that the train was on time, and denied that he told White or any person that it was thirty minutes late. Lee, the chief telegraph operator, said that shortly before nine o'clock he went into the office and saw White

in there, and was informed by Kent, in the presence and hearing of White, that train No. 21 was on time. That, in answer to several inquiries over the telephone as to the time of this train, he stated to the persons calling for the information, in the hearing of White, that the train was on time. That he had been in the office since about half-past eight, and did not hear White ask Kent for any information about this train or hear Kent give him any.

The appellee then offered as a witness Eugene Harbeson, a citizen of Shelbyville, and asked him if he called up over the telephone the depot office and inquired about the time of the train. In response to this question, he said that about a quarter to nine he did, but that he did not know who he was talking to over the telephone or who answered him. He was then asked what information he received as to the time of the train. To this question objection was made, and it was avowed that if permitted to answer the witness would say that the train was reported on time. John W. Holland, also a resident of Shelbyville, was introduced as a witness for the appellant, and asked if on the morning in question he made inquiry over the telephone as to the time of this train, and in reply he said he called up the office about 8:30 and made inquiry as to the time of the train. He was then asked what information he received, but, to this question objection was made, and it was avowed that the witness if permitted to answer would state that the train was reported to him as being on time. He was not asked who he made the inquiry of or who gave him the information.

It is insisted that this rejected evidence of Harbeson and Holland was competent and material, and that the court committed serious error to the prejudice of appellant in refusing to permit these witnesses to testify what information they received as to the time of this train. It is a well established rule in the law of evidence that a witness who testified to an important transaction may be allowed to relate briefly the reasons why he remembers the occurrence, although the relation of these extraneous facts or circumstances may have no connection with the subject matter under investigation. This character of evidence is admitted for the purpose of permitting the witness to support his testimony by his recollection of other independent facts that served to fix in his memory the transaction he was called on to testify concerning.

(Wigmore on Evidence, Vol. 1, Section 655 and 730; Elliott on Evidence, Vol. 1, Section 189, Vol. 2, Section 880). And so, under this rule, it was competent for Kent to testify that he knew that train No. 21 was on time and had so told several other persons for the purpose of corroborating his evidence that he did not tell White the train was late. But we do not think this rule of evidence should be extended to Holland and Harbeson. Neither of them were parties to the transaction. They did not know from whom they received the information that the train was on time; and, if they had been allowed to answer the rejected questions, their answers would not have corroborated Kent, as they could not say that they received the information from Kent. But, if they could have testified that the conversations were had with Kent, their evidence would yet be incompetent, because the rule that we have alluded to should not be extended further than to allow Kent to testify to information given to enquirers about the time of this train. The court permitted Kent to relate every circumstance that tended to show that he knew the train was on time thus supporting his evidence that he did not make the statement attributed to him by Biggers and Casey, and this we think is as far as the rule admitting extraneous facts to support a witness should be extended. If this rejected evidence should be admitted, we would have not only Kent telling that he gave information to inquiring parties that this train was on time, but we would have the parties who made inquiries saying they received information to this effect. There was no denial or contradiction of the fact that Kent gave the information he stated he did, to persons making inquiries about the train, and the competency of this evidence rests solely upon the ground that it corroborated his evidence that he did not give the information to White, testified to by Carey and Biggers. We have not been cited to, nor do we know of, any authority that would let the parties to whom the witness testifying to the main transaction referred tell that the witness said to them what he testified he did say. This extension of the rule would bring into many cases a great deal of wholly extraneous matter, would encumber the case with the evidence of third parties having no direct relation to the issue in controversy and would divert the attention of the jury to matters having no connection with the case.

The evidence as to the discovered peril of White is substantially this—the testimony for appellee conduced to show that the train run some 800 feet after it struck the hand-car, and that the hand-car at the place it was struck could have been seen some 800 feet by the persons in charge of the engine; while witnesses for the railroad company said that a curve and a cut obstructed the view to such an extent that the hand-car could not have been seen quite so far. The engineer testified that the first information he had of the hand-car was given to him by the fireman, and that he at once made every possible effort to stop the train. He said he was about 175 feet from the hand-car when he first saw it, and that he could and did stop the train in about 525 feet. The fireman said that the train run about a train-length after striking the hand-car, and that the train was 421 feet long. Both the fireman and engineer claimed that the cut and the curve prevented them from seeing the hand-car any sooner, although both of them said they were on the lookout.

After the evidence for the appellant company was concluded, W. P. Johnson and T. S. Byers were introduced by the appellee, and, over the objection of counsel for the appellant testified that they were passengers on the train, and that it run about three train-lengths beyond the hand-car before it stopped.

Complaint is made about the ruling of the court in permitting Byers and Johnson to testify in rebuttal to the distance the train run after striking the hand-car. The objection that this evidence should have been introduced in chief is, we think, well taken, but it was not very material evidence and, besides, was merely cumulative. The error in the time of the introduction of this evidence is not important enough to amount to reversible error.

The court instructed the jury in substance that if they believed from the evidence that it was the custom of long standing for the telegraph operator to furnish information to section foremen as to when trans were on time or delayed, then it was the duty of the telegraph operator to furnish White upon his request the correct information concerning train No. 21; and. if they further believed that White made inquiry and was informed by the operator that train No. 21 was thirty minutes late, and that White relying on this information went out on. his hand-car, and while exercising ordinary care for his

own safety and as a direct result of the erroneous information was killed, they should find for the plaintiff.

In another instruction they were told that it was the duty of those in charge of the train to use ordinary care to avoid striking the deceased after having discovered his presence on the track, having due regard for the safety of those on board the train; and if the jury believed from the evidence that there was failure on the part of the employes to exercise such care and by reason thereof he was killed, they should find for the plaintiff.

Other instructions were given, correctly submitting the railroad company's side of the case to the jury.

The instruction relating to the information given by the telegraph operator to White is criticized, because it omits the use of the word "negligence." It is said that the instruction should have read that if the operator "negligently" gave this information; but it was the duty of the operator when inquired of by White to give him the correct information as to the time of this train, and the liability of the company arises out of the fact that the information given was incorrect. Its liability did not depend on whether the operator was negligent or careless in giving it or not, it was the fact that he gave it that fixed liability on the company. There was ample evidence to authorize the jury to believe that he gave incorrect information as to the time of this train, and that this incorrect information was the proximate cause of the death of White. It is unreasonable to believe that a careful, prudent, experienced railroad man, such as all the evidence shows White to have been, would have gone out in his hand-car on the time of this train, unless he has been informed that it was late.

As the fireman testifies that he was looking, and saw the hand-car immediately after the train came around the curve and at once notified the engineer, and as the evidence showed that this point was 800 feet from the point where the hand-car was struck, and there was evidence that the train could have been stopped in less than 800 feet, there was evidence to support the instruction upon the question of discovered peril. Leaving out of view the question as to the duty of the persons in charge of the engine to keep a lookout for trackmen, a question that is not presented by the record, it was certainly their duty to exercise the degree of care mentioned in the instruction to prevent the collision after the hand-car was discovered.

Upon the whole case we think the instructions were as favorable to the company, if not more so than it had the right to demand, and that the evidence fully justified the verdict.

Wherefore, the judgment is affirmed.